The next case on the calendar for today is number 20-39-63 IJK Palm LLC v Anholt Services USA. We'll hear from Mr. Sheeley. May it please the court, Sean Sheeley from Holland Den Knight representing intervener appellants. In this 1782 petition, IJK Palm is asking to take pre-suit discovery, but they can't meet, and they haven't met, their burden to establish the three statutory factors. And those are, first, they're not an interested person in any foreign proceeding against United Oils Limited. Second, the discovery that they're seeking is not for use in any reasonably contemplated proceeding. And third, Anholt is not an alter ego of entities located in Bermuda, such that those entities should be deemed to be found in the District of Connecticut. The really unique fact here about this 1782 petition and proceeding is that we've got a Cayman Island liquidation, UOL, United Oils Limited is in liquidation. And the court should reverse the district court's granting of the petition runs afoul of the automatic stay that is imposed as soon as a company enters into an official liquidation in the Cayman Islands. And the point of that is that that Cayman liquidation cut off any rights that IJK Palm had to proceed with any type of derivative action. But it could proceed with such an action, I guess, if the Cayman court permitted it, could it not? That's right. So why is that not within, you know, reasonable contemplation? Yes, because it is too speculative and remote. There are several hoops and both parties, experts have cited to the same Cayman case, the Sphinx case, which outlines those hoops that, you know, it has to get approval from the joint official liquidators. They can decide to pursue a claim or not pursue a claim. And if they decide not to pursue it, then they might appoint an agent to pursue on their behalf. But then that would be subject to objections by the liquidation committee. Sorry. But haven't we heard from the liquidators to say that if they don't bring the case, they'd be happy to let IJK bring the case? That's not exactly what the liquidators have said. The liquidators, actually, that's it's relevant why they're not here. The IJK Palm sent the liquidators their allegations and asked the liquidators to intervene or to say that they weren't going to intervene. But we don't have in the record any response from the liquidators to that letter. What we have is a letter saying that they do not object to IJK Palm's petition. But then two years later, they filed, the liquidators filed a dissolution request with the Cayman court to close the liquidation. So they presumably decided that at that point, nothing further would remain to be done in the affidavit that they submit with that petition to dissolve. They say that based on the information that's available to them, they think it's highly unlikely that any additional investigation would yield any assets for the liquidation. I mean, didn't they subsequently file something in the Cayman court to keep it open? So then when we brought that to the Connecticut court's attention, IJK Palm went out and negotiated with the liquidators and agreed to pay for the liquidators fees to withdraw the petition. And the liquidators then submitted a letter to the court saying IJK Palm has contacted us. They've agreed to pay for any costs associated with the liquidator said that they found that there was no prejudice to the stakeholders, the creditors. Isn't it logical to infer from that, that the liquidators would be fine with the Sphinx-like action on the part of IJK if they could. And I guess the trick is here. It seems to me, at least with respect to UOL, that it's clear that the IJK does not appear to be directly an interested party in an action, but it seems like they have a contingency. I don't know what the proper word would be, but they have a contingent interest. And it's either going to be the case that they'll present this evidence if they obtain it to the liquidators who will then bring an action, or if the liquidators decline, it certainly seems that IJK is saying that they'll go full steam ahead as much as they would be if they were a directly interested party. So it's interesting this question of does the introduction of that one contingency, again, assuming I know that you argue there's no such thing as a double derivative action under payment law. And I guess that's another question, but hypothetically, if we were to accept the proposition that their proposed double derivative action was acceptable under Sphinx, why is the introduction of that one contingency, in your view, enough to distance IJK from the status of being an interested party? If you could answer that to for use, too. My question, I think they're related, like how, if we read Sphinx to permit a later action, how it would not satisfy both the for use and interested party. Yes, they really do overlap. And in fact, this court's decision in certain funds, which addresses even a Cayman liquidation, says it's a close call about interested person, whether a creditor, it wasn't this indirect, you know, double derivative, but whether a creditor might be deemed an interested person, but found that it wasn't for use because creditors passing along information to liquidators isn't for use. And that's what we've got here. But to answer Judge Nardini's question, it's too remote. The contingency makes their status as an interested person too remote. The issue before the court on appeal isn't whether or not IJK Palm could be an interested person in the future. We're not looking at any crystal ball here to determine what might the liquidators decide to do. Would they go out and get funding from a litigation funder? Would they want to bring the case themselves? Would there be objections from the liquidators, from creditors committee objecting to IJK Palm as not representing their interests? Would the Cayman court find IJK Palm a suitable representative? There's too many contingencies and a prediction of what would happen in the future. The question is, are they an interested party now? And they are not. They have not jumped through those hoops, which both Cayman law experts cite the Sphinx case. They disagree about whether or not IJK Palm would be able to meet those contingencies, but they don't agree that those hoops are there. And they haven't been met yet. And therefore, IJK Palm is not an interested party and the documents aren't for use in any reasonably contemplated proceeding. Could you address the other part of the district court's holding, which is putting aside the action against UOL, that they are an interested party with respect to the action against the, I can't remember his name, PIP, because there, would you agree that there is no contingency separating their interest? That's correct. There's not an interested party argument about TIP or Mr. Randall. So what's the objection? Explain your objection to that. Yes, the for use and the reasonable contemplation prong cannot be met for PIP. And you have to meet all three requirements. PIP was a complete afterthought. IJK Palm doesn't rely on PIP in their petition or their documents supporting it. It was only after the interveners came in that they staked out a fallback position that they could also bring a claim against PIP. What's your, why is that a problem? Is that, is that waiver or is there some authority saying that you can't, that it has to be in the petition itself? Well, procedurally, we think that the district court should have considered it. IJK Palm could have filed a second petition if they wanted to go after PIP, but why it is a problem substantively is there is no objective indicia in the record relating to any claims against PIP. It's a purely subjective statement by a representative of IJK Palm that they have learned more facts that have convinced me that IJK Palm has viable claims. That's in the record at 1186. That's the only statement. There's no, what are the causes of action? What are the legal theories? There's no, it's a totally incoherent nascent stage proceeding and it's ranked speculation that they would proceed against PIP. And on this record, there's no objective indicia to support it. I see I'm over my time. Okay. Thank you, counsel. We will hear from the appellee, Mr. Willenbrink. Morning, your honors. May it please the court. I represent IJK Palm, which has a $6 million investment and UOL stolen from it. And now for nearly six years has been seeking discovery as part of an effort to get that money for itself and its fellow investors back. Would you mind? I'm sorry. Certainly, your honor. You're going to have, I'm sure, a good point to raise for us. Would you mind just picking up where we left off with respect to the arguable action against PIP, which the district court found was an action in which you would be an interested party. Your adversary points us to page 1186 and says you were insufficiently specific about what exactly this action would be. All that sort of thing. Could you address that? And maybe are there other parts of the record? Is everything founded on what's to be found at pages, whatever that is, 1186, that three-page affidavit? To answer that question, no, your honor. At pages 1187 and 1188, we outline what the intended suit against PIP would be. That was from our representative, Mr. Schlitt. And then, again, at page 1288 of the appendix, we have a declaration from our Cayman council who acknowledges that we invested through PIP and expect to bring an action against PIP. What is that action? I'm not asking you to represent what the action is. Where in the you said that you would bring it against PIP. I believe the best place for that, your honors, would be at pages 1187 and 1188 of the appendix where we say IJK Palm also intends to file suit against the current and former directors of PIP, Zach Kimber and Bill Randall, respectively. Throughout the post-default period, Mr. Randall, the original director of PIP, inexplicably delayed taking several actions, damaging PIP, and thus IJK. And that wasn't in the petition. Did you move to amend the petition at any point? We did not, your honor. And I know this case has gone on for a long time, and I appreciate why you might have been trying to work within the existing petition, but there was nothing that prohibited you from bringing an amended petition, right? Nothing prohibited us, your honor, but we're also not aware of any requirement that we bring a separate petition. This was a fast evolving situation. It wasn't until after we filed our original application that the liquidation and the Cayman Islands was instituted, which of course brought with it a wholly separate set of legal issues that we had to address. But I mean, here you just say, as I'm reading on page 1188, I think what I'm reading is that the only allegations against Mr. Randall and Mr. Kimber are that they inexplicably delayed taking several actions, but those actions are not obstructing PIP's path to discovery. But I don't see any description of what they did that purportedly obstructed the path to discovery. Now, I may be missing something, Mike. Is there additional language where you articulate the claim in any other way? No, your honor. I think that's fair. What is in the pleadings is what we have set forth. Can I just make sure that I have the universe, because it sounds like from all of our questions, that this is going to be important for us. I want the universe of steps that your client has taken toward litigation. The ones that I've noted, if you've retained attorneys, you performed research, and you've looked at your files. Is there anything beyond that? Yes, your honor. We also, IJK Palm made a capital call. Yeah, but that's for the paying the attorneys, right? I saw that. I'm not sure if I count that as a fourth item or a subset of as a necessary precondition to the retaining the attorneys. Okay, but I'll list it. So the capital call? I think this would fall under your retention of attorneys, but our Cayman Islands Council stands at the ready to file a lawsuit in the Cayman Islands. And we do have second circuit law that says retaining lawyers is not sufficient. Is that right? I believe it's retaining lawyers standing alone. So your idea is that, so basically what you're suggesting is that the research and looking at your files is the extra that is needed and is sufficient to lift over the bar that retaining attorneys alone isn't high enough? Yes, your honor. That is what we're saying. If you had convinced the liquidators to come to us and hire lawyers and file a 1782 request and funded it perhaps, maybe they would have said, well, we're not going to do this unless you give us the money. There's simply not enough money in the estate. We might have a different situation. Would you agree? I would agree that some of the arguments that are being made by Ann Holt would be less strong, but I guess I'm wondering why you didn't do this. And maybe I'm just going beyond the record here, but why would that not have been the more straightforward way to do it? There's no contingency as I understand it under Cayman's law that would stand between the liquidators instituting an action and obtaining the discovery, because I think it's undisputed that the liquidators would have a right to bring this action if they wanted. And I suppose you could have funded it or not, but especially given that that is a vehicle that exists, why is it that we should allow someone with only a contingent ability to bring a lawsuit, a contingency that might or might not come to fruition? Why should we recognize the ability of a contingent litigation as enough to make you or your client an interested party? To answer your Honor's question first about why not the litigators, this has been a very complicated procedure as I think the record reflects. And as you mentioned, the liquidators don't have any funds in their estate, which we believe is because the debt holders basically drained the UOL estate when they left it. When this situation happened, we stepped in and tried to take action immediately. We did speak with the litigators. Mr. Sheely acknowledged the letter that we sent, didn't hear anything back. So we filed the application. At that point, eventually the liquidation was put in place and we spoke with the liquidators then, at which point they did not have funds to jump in and take over the Section 1782 proceedings. But what they did tell us, and I'll read, this is from page 1342 of the appendix, is that they would be grateful for the material recovered under any action undertaken by IJK Palm and that they're empowered to investigate the causes of the failure of UOL and make such reports to the court as they think fit. And they would like this Section 1782 discovery for that reason. So legally, it sounds like you're asking us to expand kind of what's encompassed by the meaning of interested person. And I'm just wondering how you would have us define that to encompass your client. I don't think it actually needs to be defined, Your Honor. Just let me, legally, what would you say then? How is IJK an interested person? Well, I think that the mere existence of a contingency between receipt of the discovery and the actual use of the discovery is not necessarily, it has never been recognized as a So I would refer the court to its decision in the Hornbeam case. In that case, the applicant had an outstanding $1 million judgment against him in the British Virgin Islands where he wanted to file his foreign suit. Despite that judgment being in place, and it prohibited him from filing that suit, this court still allowed Section 1782 discovery. So I think that the mere existence of a contingency between here and using the discovery is not necessarily fatal. If, I see I'm over my time, if Your Honors would permit me. You can continue. I have one more question too, Prosecutor. Sure. The other thing I would point out is that there is a liquidation ongoing. I don't think anyone disputes that the liquidation is a court of liquidators. And those court appointed liquidators have made a specific request for us to provide them with Section 1782 discovery, which is going to be used in that. But you are, you agree that you are not acting as an agent of the liquidators, correct? We don't have a formal legal relationship with them. No. Well, whatever the, I mean, I don't know. I don't know how that answer marries up to my question, but I think it would be relevant. You have never alleged, or you didn't claim before us in your briefs with the district court that you were acting as the agent of the liquidators, right? You're doing something that they think might be helpful to them, but that doesn't make you their agent, correct? We have never alleged that we are their agents in a strict sense. And that would be different, right? I mean, if you came here and you said we have an agency relationship, we're acting on their behalf. We might have a different situation, but that's not how the case comes to us, right? You're just a friendly party, I suppose. I think if your honor, if I could refer you to two cases from the second circuit, first is Burlemont from 2014. There, the applicant was granted discovery. And the basis for that was he was going to provide it to an investigating judge. Yeah, but an investigating magistrate judge in Switzerland is actually, that's not just an interest. An investigating magistrate is not a party. I mean, that is a tribunal effectively in a civil system, right? I mean, that's a court. It's like submitting something to a grand jury. As far as I understand it, the liquidators are court appointed liquidators, so they are acting on behalf of the court. So I think that they would, their liquidation... But a liquidator is appointed by a court to help out. That's like a bankruptcy trustee. A bankruptcy trustee is not the court, whereas I'm just saying a Swiss investigative magistrate is not somebody who helps a court in Switzerland. That is the court in Switzerland. And also there were procedural mechanisms under Swiss law that allowed a victim to initiate a procedure before a Swiss investigating magistrate. Again, that's someone going to a court, not someone going to a party who might go to a court. Fair enough, Your Honor. I would also refer you to the Lancaster factoring case, 1996, where the applicant had been instructed by a bankruptcy trustee to go see whether the trustee of the Labor-Vetro bankruptcy had any claims. And that was the instruction given by the trustee to the applicant in that case. And Section 1782 discovery was granted there. Can I just ask, do we need to find that the Bermuda entities were alter egos of Anhalt? No, Your Honor. I think we've really gotten fairly far afield on that issue. What the district court found, and the magistrate judge found, is that the three Bermuda entities operate primarily from Connecticut. And what the district court found was that Mr. Massoud operates them from Connecticut. Now, in Hertz, the U.S. Supreme Court case from 2010, the Supreme Court held that an entity's place of business is where it's subject to general jurisdiction. That's its nerve center, where its officers direct and control the business. So I think it's fairly clear here that there's general jurisdiction over the Bermuda entities. And the parties don't disagree that the existence of general jurisdiction supports a finding of them being found in Connecticut. There's no further questions. Thank you, Your Honors. And we respectfully request that you confirm the district court. Thank you, counsel. Mr. Sheely, you've reserved a minute for rebuttal. Yes, thank you. Let me just pick up on the cases that were cited at the end here by counsel. The Lancaster case is completely distinguishable. In that case, the petitioner was the U.S. agent of the Italian bankruptcy trustee. And the U.S. agent had been approved by the Milan court to act in that capacity. It's exactly the scenario that we're saying are the hoops that haven't been jumped through here. There was no contingency in the Lancaster bankruptcy. In Hornbeam, where the party had to satisfy a judgment, that was a contingency that was solely within the control of the party, of the petitioner, to pay the judgment or not pay the judgment. The contingency is up to the discretion of third parties, to the liquidators, to decide what they want to do as fiduciaries, to the court, to decide whether or not IJK Palm is an adequate agent. And that's a distinguishing piece. This case is much more like the cases where the court has denied for use or interested person, whether that's the Mangoris decision, whether that is the Sargent decision by the district court, or whether certain funds, I think, are the more relevant and analogous positions. With respect to the record citations for PIP and any objective indicia, counsel referred to the second declaration of their legal expert, Ulrich Payne. But that notably in his second declaration, he adds the words, as well as against the current and former directors of PIP, as being within the scope of his law firm's retention. Those words weren't included a few weeks earlier in his petition, but he adds them in this new declaration. But that's it. There's no objective indicia about the legal theories or claims in this affidavit that would support any objective indicia. And as Judge Perez pointed out, there is second circuit precedent that says just merely talking to a law firm about the possibility of initiating litigation. That's not an objective indicia. My time is up here as well. Thank you, counsel. We'll take the case under advisement. Thank you. The remaining cases for today are both on submission. So that concludes our business for the day. I'll ask the courtroom deputy to adjourn. First sentence adjourned. Thank you. Thank you.